STATE OF OREGON, *Respondent,*
*v.*
GASTON CLOUTIER, *Petitioner.*
(TC 77-1620, CA 9175, SC 25731)

596 P2d 1278

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the brief was Gary D. Babcock, Public Defender.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson,** Lent, and Linde, Justices.

LINDE, J.

Howell, J., specially concurring.

Tongue, J., dissenting.

---

**Bryson, J., retired April 1, 1979.

## LINDE, J.

Defendant was charged in two counts of an information with burglary in the first degree, ORS 164.205, 164.225, and with attempted theft in the second degree, ORS 164.015, 164.045. Count I charged that defendant entered a dwelling, described as the Balfour residence, with the intent to commit a crime therein. Count II charged that "as part of the same act and transaction set out in Count I," defendant attempted to commit theft of less than $200 in money from Helen Balfour. The evidence showed that defendant entered the Balfour residence without permission, took $10 from Mrs. Balfour's purse, and returned the money to Mrs. Balfour when he learned that she was calling the police.

A jury found defendant guilty on both counts. The trial court entered a single order, entitled ORDER ON SENTENCE, the operative paragraphs of which read as follows:

> The defendant, GASTON CLOUTIER, having heretofore been duly convicted of the crime of "COUNT I: BURGLARY IN THE FIRST DEGREE and COUNT II: ATTEMPTED THEFT IN THE SECOND DEGREE," upon the verdict of a jury on August 18, 1977, and this being the time set for the imposition of sentence; the defendant upon being asked if he had anything to say why sentence should not now be imposed, answered, showing no good or sufficient cause;
>
> It is hereby CONSIDERED, ORDERED and ADJUDGED that GASTON CLOUTIER is GUILTY of the crime of "COUNT I: BURGLARY IN THE FIRST DEGREE and COUNT II: ATTEMPTED THEFT IN THE SECOND DEGREE," and it is the judgment of the Court that he be sentenced to the OREGON STATE CORRECTIONS DIVISION for a period of FOUR (4) YEARS; . . .

On appeal, defendant argued that the court erred in convicting and sentencing defendant for both crimes arising out of the same criminal conduct and charged

[581]

in the same indictment, relying on this court's decision in *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), which held that a burglary and subsequent larceny could lead only to one conviction and sentence. The state, believing defendant's *Woolard* claim to be well taken, confessed error in the Court of Appeals. That court nevertheless proceeded to examine the claim in the light of *State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978), which was decided after the state's confession of error. *Gilbert* held that when a defendant was accused of withholding the stolen property of six persons at the same time and place, a verdict on the trial of the first indictment only did not bar subsequent prosecutions for the others. The Court of Appeals concluded that this court's analysis in *Gilbert* of ORS 131.505, which was enacted in 1973, "is so inconsistent with *Woolard* that *Woolard* must be deemed to have been overruled by ORS 131.505." 33 Or App at 123. The court therefore affirmed the conviction and sentence. We allowed review to reexamine the status of convictions on multiple charges arising from a single act, transaction, or episode after the 1973 statute.[1]

# I

Courts and commentators have long recognized the problem of attaching "multiple consequences" to a "single criminal act" or of dealing with the "multiple criminal offender" to be one of the most vexing in

---

[1] The court submitted the following questions to counsel on this review:

1.  May a defendant be separately convicted and sentenced for both burglary and an attempt to commit the crime he intended when he entered the burglarized premises?

2.  Has the enactment of ORS 131.505 (2) and (3) together with the opinion in State v. Gilbert, 281 Or 101, 574 P2d 313 (1978), impliedly overruled State v. Woolard, 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971)?

3.  What are the relationships, if any, between the rule of *Woolard* and double jeopardy, or between *Woolard* and multiple convictions or multiple sentences arising out of a single criminal episode?

4.  If the rule of *Woolard* is still viable, does the sentencing order in this case violate it?

criminal law. *See, e.g.,* Horack, *The Multiple Conse-
quences of a Single Criminal Act,* 21 Minn L Rev 805
(1937); Remington and Joseph, *Charging, Convicting,
and Sentencing the Multiple Criminal Offender,* 1961
Wis L Rev 528 (1961). It is necessary to recall the
complexity of the problem so as to avoid reducing its
solution to a simple but illusory formula. The difficul-
ty reaches deep into the vocabulary of criminal law
itself, for an analysis phrased in such apparent en-
tities as a "crime" or an "act" risks being merely
circular. Described from a layman's perspective, with-
out regard to its legal consequences, a defendant's
culpable behavior may appear as one continuous
course of conduct, planned and executed through pre-
paratory steps, false starts, repeated attempts and
failures, to eventual completion; another's may appear
as distinct events marked by breaks in the continuity
of time and place, or by different victims, or by reflect-
ing new choices to act or to refrain on the part of the
defendant. The "singleness" of the defendant's act has
been described in terms ranging from a single "muscu-
lar contraction,"[2] through a single "transaction" or
"episode,"[3] to "unitary criminal conduct."[4] On the
other hand, criminal codes define offenses so that a
limited number of elements suffice to constitute one
"crime"; moreover, statutes often address particular
objectives by enacting special prohibitions that over-
lap more general offenses. As a result, many incidents
that would appear as a single "act" or "crime" from a
nonlegal perspective are also violations of several dis-
tinct criminal laws.

However, the administration of criminal law does
not consist of the abstract analysis of a factual
occurrence. It involves a series of decisions by differ-
ent persons and institutions charged with different

---

[2] *See* Horack, *supra* at 814-818.

[3] *See* ORS 131.505(4); ORS 132.560(2); *State v. Boyd,* 271 Or 558, 533
P2d 795 (1975); Note: *Criminal Law: Cumulative Sentencing for Offenses
Within a Single Transaction,* 26 Fla L Rev 367 (1974).

[4] *See* Note: *Multiple Prosecution and Punishment of Unitary Criminal
Conduct—Minn. Stat. § 609.035,* 56 Minn L Rev 646 (1972).

functions. Thus Remington and Joseph, identified five "basic issues" that often arise in dealing with a single offender:

(1) For how many offenses should a suspect be prosecuted?

·(2) Of these offenses charged, which should be submitted to the jury for its consideration?

(3) Where more than one offense is submitted to the jury, for how many offenses may the jury properly convict the defendant?

(4) Where there is conviction for more than one offense, for how many offenses is it proper to sentence the defendant?

(5) Under what circumstances may an accused be subjected to separate, successive prosecutions instead of adjudicating his liability in a single proceeding?

Remington and Joseph, *supra,* at 529.

The proper answers to these questions and others that could be added are of obvious importance in public policy and in the practical administration of criminal justice; yet traditionally only a few have been addressed by express legislative directives beyond the definitions of the different offenses themselves. This court, like others, has sometimes answered questions like the above by stating a conclusion whether the defendant's conduct constituted one or more than one offense. *See, e.g., State v. McCormack,* 8 Or 236 (1880) (larceny of a horse and tack at the same time and place held "but one crime" for purposes of double jeopardy); *State v. Clark,* 46 Or 140, 80 P 101 (1905) (theft of property of several persons at one time and place held but one offense for purposes of charge in a single indictment); *State v. Gratz,* 254 Or 474, 461 P2d 829 (1969) (armed robbery of two persons at the same time and place held to constitute two offenses for purposes of indictment). But the mere fact that a defendant's acts have violated more than one criminal statute or have violated one statute more than once does not in itself provide the answer to each of the operational issues identified

[584]

above. It does not follow, merely because a defendant can be charged with more than one violation of a statute, that the legislature also meant each violation to be the basis for a separate conviction or sentence, or that an objecting defendant may be tried for each in a separate proceeding. Thus this court in recent cases has treated these as posing separate issues of the governing policies beyond the determination whether one or several offenses were involved. *See, e.g., State v. Welch,* 264 Or 388, 505 P2d 910 (1973) (simultaneous bank deposit of two false checks held subject to only one sentence); *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975) (simultaneous illegal possession of drugs and of a stolen television set held "single criminal episode" for purposes of requiring a single prosecution, ORS 131.515(2)).

In short, we have recognized that the answers to the foregoing operational issues must be sought, first, in such legislative directives as do exist; second, in the intentions and policies that may plausibly be attributed to the legislature in the light of legislative history, of the overall statutory framework, and of constitutional principles, *see State v. Boyd, supra,* at 565-566, n. 4; and finally in the state and federal double jeopardy clauses and other applicable constitutional limitations. *See, e.g., Simpson v. United States,* 435 US 6, 11 and n. 5, 98 S Ct 909, 55 L Ed 2d 70 (1978); *Brown v. Ohio,* 432 US 161, 165-166, 97 S Ct 2221, 53 L Ed 2d 187, 194 (1977).

II

In *State v. Woolard, supra,* as in the present case, defendant was charged with one count of burglary by breaking and entering a dwelling with the intent to steal and a second count of stealing property in the dwelling. She was convicted on both counts and sentenced to concurrent six-year terms in the penitentiary. This court reversed, but the several opinions in the case showed the different possible approaches to the problem.

All members of the court agreed that a defendant could properly be charged separately with the burglary and the theft or other substantive offense committed after the entry. Although such charges arising out of a single transaction or episode are joined in one prosecution, *see State v. Boyd, supra, State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), they do not charge the "same crime" twice. Nor did the decision in *Woolard* suggest that both charges could not be submitted to the jury, or that the jury should be instructed that they could return a verdict of guilty on no more than one of the charges. It is, of course, possible that a jury may find that a defendant entered with the intent to commit a crime but did not steal, or that he stole but did not enter illegally and with criminal intent, or that he did both. Further, the court did not treat the problem as one of "merger." That term, which can easily become a name for a conclusion rather than a reason, is best reserved for the narrow situation when the completion of one offense necessarily includes commission of acts sufficient to constitute violation of another statute. *See State v. Roach,* 271 Or 764, n. 1, 534 P2d 508 (1975).[5] This is not the case with burglary and theft.

From this legal character of burglary and theft as "entirely separate and distinct criminal acts involving different elements," two members of the court concluded, in dissent, that Woolard could properly be convicted and sentenced for both offenses. 259 Or at 241. The majority, however, rejected this test for multiple convictions and sentences as "purely mechanical" and not conclusive on the question whether the legislature intended violation of two or more statutes

---

[5] *See, e.g., Pinkett v. State,* 30 Md App 458, 352 A2d 358 (1976). New York cases "merging" kidnapping into other offenses involving restraint of the victim are reviewed in *People v. Cassidy,* 40 NY2d 763, 358 NE2d 870 (1976).

For a brief summary of the history of "merger," *see* Clark & Marshall, *Law of Crimes* § 2.03 (7th ed, 1967). ORS 161.485(1) prevents the consequence that a completed crime precludes prosecution for an included inchoate offense.

in the same course of conduct to lead to cumulative punishment. *Id.* at 235. Noting that the statutory maximum sentence for burglary was more than twice that for larceny in a dwelling, the majority concluded that the severe punishment allowed for burglary was meant to incorporate the punishment for the succeeding larceny, if that was the crime intended in the unlawful entry. But the court also recognized the difficulties posed in two situations: (1) when the burglar intending one crime commits a different crime after entry, and (2) when the crime intended and committed carries a heavier penalty than burglary. The court made it clear that its holding did not address the first of these situations. As to the second, two concurring members of the court, in dicta, expressed the view that when a burglar intends and carries out a crime more serious than the burglary, "the penalties provided for the more serious crimes are adequate to provide the basis for sentencing where the crime is aggravated by an unlawful intrusion." *Id.* at 240.

As the court recognized in *State v. Welch, supra,* the attribution of the *Woolard* holding to legislative intentions was necessarily speculative.[6] *Welch* reached the same conclusion against multiple punishment with respect to a defendant's conviction on each of two counts of publishing false checks in making a single bank deposit. Although the opinion purported to "treat" the transaction as "encompassing only one offense," the court explained this result by its belief that, if the legislature had considered the problem, "we suspect it would have chosen not to impose multiple punishments." The opinion quoted with "sympathy" the United States Supreme Court's statement in *Bell v. United States,* 349 US 81, 75 S Ct 620,

---

[6] "The rationale was that the larger penalty for breaking and entering was provided by statute *probably* because a lawless intrusion is performed with the intent to commit another crime when the intrusion is completed. *If* this was the reason for the imposition of the greater penalty for burglary, we deemed it inappropriate to impose a separate sentence for larceny because that crime already had been taken into consideration by the legislature in setting the penalty for burglary." (Emphasis added.) 264 Or at 392.

99 L Ed 905 (1955), that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." 349 US at 83, quoted in 264 Or at 393.

*State v. Woolard* was decided under the law in effect before the revisions of the criminal code and criminal procedure code in 1971 and 1973. Accordingly, if our answers to the several operational issues of multiple prosecutions and penalties are to reflect an effort to carry out legislative policies, these enactments must be scrutinized for evidence of the relevant policies.

Several of the new sections came before this court in *State v. Gilbert, supra.* The revision of the substantive crimes consolidated the several formerly separate forms of theft in one statute, ORS 164.015. Although the various forms of theft are further defined in separate sections, ORS 164.065-164.095, the legislature provided that theft "constitutes a single offense," and need not be charged by alleging the particular manner of its commission. ORS 164.025. Gilbert had been tried and acquitted on a charge of theft by withholding one of six stolen firearms found in his home, and he resisted further trial on indictments charging theft by withholding firearms belonging to different persons on the ground of former jeopardy. This claim required the court to interpret the standards for single or multiple prosecutions enacted in 1973, ORS 131.505-131.525. We concluded that the express terms of ORS 131.505(3), which provides that even in one episode of criminal conduct "there are as many offenses as there are victims," precluded treating the simultaneous withholding of the property of several owners as "the same offense" for purposes of

ORS 131.515(1).[7] Thus, if *Gilbert* shows anything relevant to the problem in the present case, it is that a statutory statement that conduct "constitutes a single offense" as in ORS 164.025, or "constitutes a separate and distinct offense," as in ORS 131.505(2),[8] or "as many offenses as there are victims," ORS 131.505(3), must be related to the functional context for which the particular statute is enacted.

The Court of Appeals in the present case recognized that this is so, and that *Gilbert* dealt only with a claim of former jeopardy. Indeed, our opinion in *Gilbert* expressly distinguished the "separate problem" whether the defendant, if he were found guilty on more than one of the several indictments for theft by withholding, could be cumulatively sentenced. 281 Or at 110. ORS 131.505 obviously does not address that problem, being limited by its own terms to the provisions governing single or separate prosecutions. Nevertheless, the Court of Appeals believed that our reading of ORS 131.505 in *Gilbert* necessarily implied the propriety of separate sentences for "separate offenses." Because ORS 161.505 defines an offense as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state," the court thought that "it logically follows that separate sentences are authorized for separate offenses." 33 Or App at 126. But we do not agree that this follows from the mere definition. No doubt conduct is an

---

[7] ORS 131.505(3):

When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims.

ORS 131.515(1):

No person shall be prosecuted twice for the same offense.

We also found that constitutional problems under *State v. Brown, supra,* and *State v. Boyd, supra,* had been obviated by the state's willingness to consolidate the charges.

[8] ORS 131.505(2):

When the same conduct or criminal episode violates two or more statutory provisions, each such violation constitutes a separate and distinct offense.

[589]

"offense" by virtue of ORS 161.505 only if it is subject to the sanction of a fine or imprisonment, but it is not questioned that each of the several statutory violations that may occur in the course of a single criminal act, transaction, or episode would individually constitute an "offense" within that definition. The question is whether they may be punished cumulatively. For indications of the legislative policy on that question we must look elsewhere than the definition of an offense or the provisions for joining charges for prosecution.

## III

While detailed and systematic attention is lavished on defining the elements of the many offenses that, upon proper charge, trial or plea, and conviction, will make one liable to disposition as a criminal, this is less true of the law governing the dispositional phase that is the intended and actual end product of the process. It is the dispositional phase that concerns us here. The range or class of potential penalties prescribed for each statutory offense represents a legislative judgment of the gravity of that offense alone, and there are often provisions for aggravation or for habitual offenders. *See* ORS 166.230; ORS 161.725-161.735.But only occasional provisions directly address the penalty to be imposed for multiple statutory violations that share common elements of time, place, act, or intent. And where examples of such enactments are found, for instance in California, Illinois, and Minnesota, they have not been wholly successful in distinguishing the problem of multiple prosecutions from that of multiple sentences or in escaping the dilemma of defining the "same act," "conduct," or "offense."[9] Courts in jurisdictions without such statutes have wrestled with the

---

[9] Calif Penal Code §654:

An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. * * *

problem in much the same terms as the courts in those states. *See, e.g., Irby v. United States,* 390 F2d 432 (DC Cir en banc, 1967); *Estevez v. State,* 313 S2d 692 (Fla 1975) (comparing divergent results in earlier Florida burglary-larceny cases); Note, *Criminal Law: Cumulative Sentencing for Offenses Within a Single Transaction,* 26 U Fla L Rev 367 (1974).

The search for a rational policy toward the conviction and sentencing of the so-called "multiple offender" must start from the recognition that, though a defendant's conduct may have constituted multiple offenses, the sentencing phase concerns the disposition of a single, not a multiple, human being. Sentencing policy and practice forever struggle with the contradictory demands that the punishment fit the crime and that it fit the criminal. It is further complicated by the

*See* Johnson, *Multiple Punishments and Consecutive Sentences: Reflections on the Neal Doctrine,* 58 Calif L Rev 357 (1970).

Ill Rev Stat, ch 38, §1005-8-4(a) (Supp 1978):
When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. Sentences shall run concurrently unless otherwise specified by the court.

*See* Note, *People v. King—"Separate and Distinct Acts" is Appropriate Test for Multiple Convictions and Concurrent Sentences,* 78 Univ Ill L For 180 (1978).

Minn Stat §609.035:
Except as provided in section 609.585, if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts. Laws 1963, c. 753.

(The exception permits conviction for a crime committed during a burglary as well as the burglary.) *See* Note: *Multiple Prosecutions and Punishment of Unitary Criminal Conduct—Minn. Stat. § 609.035,* 56 Minn L Rev 646 (1972).

contrast between concurrent and consecutive sentences, by potential differences between a single sentence and concurrent sentences of the same length, by the collateral consequences of multiple judgments of conviction even when only a single sentence is imposed, and by the operational significance of the judgment of conviction apart from sentencing, particularly with respect to appeals.

The Oregon statutes do not contain a specific provision governing conviction and sentence on multiple charges comparable to those mentioned in note 9, above. ORS 161.025(g) states as a purpose of the 1971 revision of the criminal code "[t]o safeguard offenders against excessive, disproportionate or arbitrary punishment." And the 1971 and 1973 statutes were joined in 1977 by an act relating to prison sentences and parole. Oregon Laws 1977, chapter 372. Following upon those reformulations of the substantive and procedural criminal law, the legislature in the 1977 act turned its attention to the problems of penology, the dispositional stages of the law.

The act places heavy reliance on presentence reports, on trial court articulation of reasons in sentencing, on appellate review of sentences even within the legally permissible limits, and on adoption of standards for parole decisions as means to compel principled analysis and to reduce disparity in the disposition of offenders at each state of the process.[10] ORS 138.040, 138.050,[11] ORS 144.775-144.790. Sentence review was

---

[10] In recommending appellate review of sentences, the task force that prepared the 1977 legislation stated in summary:

This sentence review function will serve to reduce perceived disparity of sentences throughout the state, as well as to encourage appropriate use of community corrections and state institutional facilities. To clarify the sentencing rationale, to build a literature of sentencing jurisprudence, and to supply information for possible sentence review, all judges should state for the record their reasons for the sentence pronounced.

Report of the Governor's Task Force on Corrections 17 (1976).

[11] ORS 138.040:

The defendant may appeal to the Court of Appeals from a judgment on a conviction in a district or circuit court, including a

expanded in 1977 from the former "excessive, cruel or unusual" standard to the present substantive review by reference to "the nature and background of the offender" and "the facts and circumstances of the offense." The absence of provisions for effective appellate review of sentences, particularly of the choice between concurrent and consecutive sentences, was one criticism leveled against earlier efforts to systematize sentencing law in the Model Sentencing Act published in 1963 by the National Council on Crime and Delinquency and the 1962 draft of the American Law Institute's Model Penal Code. *Compare* the American Bar Association's Report on Standards Relating to Appellate Review of Sentences §§ 3.1, 3.2;[12]

judgment where the court imposes a sentence which is cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense, . . .

ORS 138.050:

A defendant who has pleaded guilty or no contest may take an appeal from a judgment on conviction where it imposes a sentence that is cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense. . . .

[12] 3.1 Duties of reviewing court.

(a) It should be the obligation of the reviewing court to make its own examination of the record designed to effect the objectives of sentence review as stated in section 1.2.

(b) In those cases in which it would substantially contribute to the achievement of the objectives of sentence review as stated in section 1.2, the reviewing court should set forth the basis for its disposition in a written opinion. Normally, this should be done in every case in which the sentence is modified or set aside by the reviewing court.

3.2 Powers of reviewing court: scope of review.

The authority of the reviewing court with respect to the sentence should specifically extend to review of:

(i) the excessiveness of the sentence, having regard to the nature of the offense, the character of the offender, and the protection of the public interest; and

(ii) the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based.

The ABA Report comments with respect to the standard of "excessiveness":

[T]he provision is designed to reach not only the sentence that is clearly excessive on its face, but also the sentence that has no rational basis,

*and see generally,* Caraway, *Sentencing Reform in Multiple Offense Cases: Judicial and Legislative Avenues to Reform,* 7 Conn L Rev 257 (1975). Taken together, the legislature's recent enactments reflect a continuing policy to bring rationality and proportionality to the penal dimension of criminal law, a dimension often marked by haphazard statutory penalties, by a deliberate or fortuitous multiplicity of charges, and by the tactical opportunities these factors offer in plea negotiations.[13]

It is this penal policy rather than the definition in ORS 131.505 of "separate and distinct offenses" for purposes of charge and trial, as in *State v. Gilbert, supra,* that courts must seek to apply in sentencing a

----

the sentence that is dictated by emotion, the sentence that is wrong in principle, and sentences suffering from similar defects. It is intended that among other things the reviewing court should measure the imposed sentence against other dispositions that were open to the sentencing court. A consideration of whether a sentence is excessive thus involves not only consideration of a change in the length of the sentence, but also changes in its form. A commitment to jail when probation should have been imposed can of course be just as excessive as the imposition of ten years where five was called for. Hawaii has recognized this principle by retaining sentence review even though the sentencing judge has no discretion as to the length of a felony sentence. (Citations omitted.)

ABA Standards Relating to Appellate Review of Sentences, Approved Draft 1968, at 51-52.

For views of trial judges in support of such review, *see* Weigel, *Appellate Revision of Sentences: To Make the Punishmnent Fit the Crime,* 20 Stan L R 405 (1968); Frankel, *Lawlessness in Sentencing,* 41 U Cinn L R 1 (1972).

[13] *See* ORS 135.405, especially subsection (3):

The district attorney in reaching a plea agreement may agree to, but is not limited to, one or more of the following, as required by the circumstances of the individual case:

(a) To make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or no contest to the offense charged;

(b) To seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or no contest to another offense reasonably related to the defendant's conduct; or

(c) To seek or not to oppose dismissal of other charges or to refrain from bringing potential charges if the defendant enters a plea of guilty or no contest to the offense charged.

defendant who pleads or is found guilty of several factual related offenses. However, that section's definition of "criminal episode" remains important to the sentencing problem, because it prescribes when the required joinder of "two or more offenses based upon the same criminal episode," ORS 131.515(2), will bring these offenses before the sentencing court at the same time. ORS 131.505(4) provides:

"Criminal episode" means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective.

The relevance of the definition to the sentencing problem is the light it sheds on the legislature's view of the critical factor in treating criminal conduct as a unitary event. That factor is not the coincidence of "time, place and circumstances" as such, but the resulting inference that the conduct is "directed to the accomplishment of a single criminal objective." Multiple statutory violations are to be dealt with in one prosecution, not merely because they involve evidence common to the time, place and circumstances, but because the responsibility of the defendant for his conduct in pursuit of one "criminal objective" should be fully determined in one proceeding.

Other courts have found the test whether the defendant acted for a single or a sequence of separate criminal objectives to be no panacea for deciding on the proper disposition of multiple charges. The Illinois Supreme Court, for instance, adopted the "independent motivation" test for multiple convictions in *People v. Stewart,* 45 Ill 2d 310, 259 NE2d 24 (1970) (aggravated battery during an attempted robbery) and *People v. Whittington,* 46 Ill 2d 405, 265 NE2d 679 (1970) (automobile stolen for prison escape); but it abandoned this test in *People v. King,* 66 Ill 2d 551, 363 NE2d 838 (1977) as far as concurrent sentences are concerned, substituting a limit on multiple sentences only for offenses "carved from the same physical act." 363

NE2d at 844.[14] In *Irby v. United States, supra,* which involved consecutive sentences for a housebreaking and robbery in the house, the Court of Appeals *en banc* found the continuity between an offender's original criminal purpose and his subsequent acts important for his liability to two sentences, despite the difficulties of this criterion.[15] Whatever the merits and difficulties of these competing approaches, it seems to us that in ORS 131.505(4), *supra,* the revised criminal statutes have chosen to attach importance to the "singleness" of a defendant's criminal objective rather than only to the "singleness" of his acts.

In the present case, as in *State v. Woolard, supra,* there is no dispute that the offenses of which defendant was convicted arose in a criminal episode marked by a single objective—theft—as well as by continuity of time and place. Accordingly, nothing in the statutory policies enacted since *Woolard* appears to contradict the court's conclusion in that case that when a breaking and entering with intent to commit a crime is followed by the commission of the intended crime, the penalty is to be limited to that prescribed for the offense carrying the greater potential sentence. We reaffirm that conclusion. That is the specific issue, and it is all we decide in this case. Because similar problems have arisen and will continue to arise in many other cases, however, it seems pertinent to mention distinctions between the *Woolard* rule reaffirmed today and other situations involving multiple

[14] In distinguishing concurrent from consecutive sentences, the court stated that the "prejudicial effect of the double punishment in the form of consecutive sentences for crimes arising from multiple acts motivated by essentially the same criminal objective is apparent."

[15] Judge McGowan, for the majority, stressed that a burglar intending only to steal retains the choice, upon finding the premises occupied, to withdraw or to commit a robbery. Judge Leventhal, concurring, speculated that this rule might seem to favor a defendant who convinces the sentencing judge that he intended all his crimes from the beginning. Judges Bazelon and Wright, dissenting, relied on a California court's analysis that in a single episode a burglar may well intend to steal without confronting anyone yet be prepared to use threats or force to accomplish his purpose in case he meets interference. *Downs v. State,* 202 Cal App 2d 609, 20 Cal Rptr 922 (1962).

offenses, distinctions which may or may not bear upon the proper disposition of such other cases.

■ (1) As already stated, an offense may be described as being "merged" in another if all of its elements are necessarily included in the commission of the other offense. In such a case a judgment of conviction on only one of the charges is proper. *See* ORS 136.465; *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975); *State v. Roach, supra; State v. Fish,* 282 Or 53, 577 P2d 500 (1978) (felony murder includes commission of felony).

(2) By virtue of ORS 161.485, the same rule applies to an attempt, a solicitation, and a conspiracy to commit the same crime or to any of them followed by the completion of the actual commission of the planned crime, even though these inchoate crimes are not necessarily included in the completed offense.[16]

■ (3) An offense, though neither inchoate nor necessarily included in another, may be committed as one step in the commission of another offense in the course of a single criminal episode with a single criminal objective, as defined in ORS 131.505(4), *supra.* This is the characteristic *Woolard* situation, in which we assume that punishment for the most serious crime committed meets the legislature's penal objectives unless there are legislative indications to the contrary.[17]

(4) An offense may have unity of time, location, act and intent but involve sets of objects or actions that can be divided into parts, each of which would support a conviction. Typical illustrations are the simultaneous possession of several burglar tools, or of a quantity

---

[16] ORS 161.485(3):

A person shall not be convicted on the basis of the same course of conduct of both the actual commission of an offense and an attempt to commit that offense or solicitation of that offense or conspiracy to commit that offense.

[17] *See, e.g.,* ORS 166.230 (enhanced penalty for committing felony while armed with a firearm without having a permit).

of narcotics divisible into several smaller equally punishable quantities, or the simultaneous possession and transportation of the same item, or the theft of a quantity of money in the form of many bills, or driving recklessly while also intoxicated.[18] In *State v. Welch, supra,* this court held that a single transaction of publishing two false checks in making one bank deposit could not be divided up in that manner. *See also Doran v. State,* 270 Or 758, 529 P2d 928 (1974) (driving with excess blood alcohol and under the influence of intoxicants punishable only as one offense). Again, when a legislature finds reason to deter or punish continuing offenses by specifying cumulative penalties, it knows how to say so. *See, e.g.* ORS 418.990 (each day's operation of uncertified day care facility a separate offense); ORS 433.990(7) (keeping unclean slaughter house considered separate offense for each 5 day period); ORS 441.990 (operating unlicensed health care facility is separate offense for each day after first conviction); ORS 764.990 (fine for each day's violation of railroad crew shelter requirement).

(5) Distinct from the foregoing are three situations. One is the commission of offenses against several victims in a single criminal act or episode, offenses which are declared separate for procedural purposes in ORS 131.505(3). These span events of such diverse penological significance as the traffic offense that fortuitously results in the death of many instead of a single occupant of another vehicle, and the calculated decision of a robber to empty not only the cash register but also the purses of the individual employees or guests of the establishment.[19] The second is the commission of two equally serious separate offenses

[18] *See, e.g., State v. Dirks,* 35 Or App 33, 581 P2d 85 (1978) (two counts of custodial interference committed by taking at same time two children belonging to the same parent); *State v. Miller,* 14 Or App 396, 513 P2d 508 (possession and transportation of heroin).

[19] *See, e.g., State v. Gratz, supra* (robbery from two persons at the same time and place).

against the same victim for separate criminal objectives, as for instance a rape and a robbery.[20] The third distinct situation is the ongoing criminal activity conducted through a series of unlawful transactions in pursuit of one continuing criminal objective,[21] the problem characteristically presented by the disposition of illegal gaming and drug offenders and receivers of stolen property.[22] None of these situations is before us. We leave it to the Court of Appeals in the first instance to develop criteria for multiple convictions and sentencing in such cases under ORS 138.040 and 138.050, as stated above.

What remains is the situations in which the defendant's offenses have no important element in common except the identity of the offender, an offender who has committed several discontinuous unlawful acts on separate occasions, each upon a new or renewed decision to accomplish a distinct criminal objective. While such sentences, too, are reviewable under the above mentioned penological objectives of the 1977 statute, they do not pose the problem of multiple convictions and sentences discussed here.

---

A choice of analysis is illustrated by *Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955), which held the simultaneous transportation of two women a single violation of the Mann Act, *i.e.,* within the rule of *State v. Welch* in our category (4). In Oregon the analysis would hinge on whether the women were "victims," within the meaning of ORS 131.505(3), though the sentencing result might be the same.

[20] *State v. Strickland,* 36 Or App 119, 584 P2d 310 (1978) (kidnapping with intent to injure followed by rape of victim).

[21] As is apparent, the concept of an actor's "objective" does not define itself. However, it refers to the pursuit of some object or attainment of some goal beyond the successful commission of the acts constituting the offense charged; to reduce the "objective" to this would rob it of its intended significance. We also recognize that the term poorly describes the common element in separate charges arising from conduct that has no "criminal objective," *i.e.* driving under the influence of intoxicants, as in *Doran v. State,* 270 Or 758, 529 P2d 928 (1974).

[22] *See, e.g., State v. Cossett,* 34 Or App 113, 578 P2d 423 (1978) (disseminating obscene material by selling some and possessing other material).

## IV

It remains to deal with the order of conviction and sentence entered by the trial court in this case.

In *State v. Woolard, supra,* the court stated that "one breaking and entering with the intent to commit larceny can only be convicted and sentenced for either burglary or larceny, but not for both." 259 Or at 238. In other words, in a case in which the *Woolard* analysis barred multiple sentences, it would also bar the entry of convictions on all but the most serious of the offenses of which the defendant was guilty. The order entered in this case, as set forth at the beginning of the opinion, leads us to examine in more detail the relationship between "conviction" and sentence.

*Woolard* assumes a situation in which a defendant has validly been charged with and has pleaded or been found guilty of more than one offense, since otherwise the problem of the permissible penalty does not arise. This poses the question what if any order or judgment of conviction is to be entered upon the remaining pleas or verdicts when sentence can legally be imposed on only one conviction. The answer is important primarily, though not exclusively, for the process of appeal and possible further proceedings in case of a reversal.

From that standpoint, it would seem desirable that attacks on the validity of any of the verdicts on charges combined for a single trial be combined in one appeal. However, ORS 138.040 permits defendant to appeal only "from a judgment on a conviction," and ORS 137.010(5) mandates the imposition (or suspension)[23] of a sentence whenever a person is "convicted of an offense." Together, these sections create difficulties for entering an appealable judgment on the verdict on any of several charges on which a sentence is precluded by *Woolard.* The proper disposition of verdicts

---

[23] ORS 138.040 expressly allows for an appeal from a "judgment suspending imposition or execution of sentence" as a "judgment on a conviction." We do not suggest that this precludes an appeal from the sentence after sentence is imposed.

in multiple-charge, single-sentence cases has troubled prosecutors, trial courts, and the Court of Appeals. *See, e.g., State v. Morales,* 21 Or App 827, 537 P2d 109, 22 Or App 470, 539 P2d 1112 (1975); *State v. Thompson,* 20 Or App 545, 532 P2d 1140 (1975); *State v. Meyer,* 12 Or App 486, 507 P2d 824 (1973).

A number of dispositions seem theoretically possible: (1) In *Morales, supra,* which involved charges of unlawful possession and transportation of the same drugs, the state argued that the trial court correctly imposed a sentence on each charge, leaving it to the appellate court to decide which sentence should be sustained and which vacated. The Court of Appeals rejected this approach. We agree, since it would leave both sentences standing if for any reason there were no appeal. The rule against multiple sentences must be one that can be correctly applied by trial courts without an appeal. (2) Instead, the Court of Appeals suggested that the trial court might have disposed of one of the two charges by stating at the time of sentence that the charge of unlawful possession "merged" with that of transportation for this purpose, or that the charge of unlawful possession was "dismissed." 21 Or App at 833. In a petition for reconsideration, the state disputed the propriety of a trial court "dismissal" of any of the charges after verdict, because such a charge would not be involved in the appeal and could not be revived[24] in case the judgment on which defendant was sentenced were later reversed. That result could perhaps be avoided if the state cross-appealed from the dismissal of the other charges whenever a defendant appealed the judgment, but this would introduce another opportunity for procedural slips. (3) The trial court could enter judgments of conviction on all verdicts and pleas of guilty and declare that the single sentence on the most serious

---

[24] The court referred to the state's concern as being that "retrial" would be possible after "merger" but not after "dismissal," *see* 22 Or App at 472, although if the dismissal order is not entered until after a verdict or plea of guilty, it is not clear why a retrial would be necessary.

charge was also the sentence on all the others. This may be what the Court of Appeals in *Morales, supra,* meant by "merger" of the charges for sentence. Arguably it satisfies the court's obligation to sentence under ORS 137.010. However, aside from the inexactness it introduces in the use of "merger," *see* 21 Or App at 833, such judgments might appear to impose the same sentence on the "merged" charges as on that into which they "merged," so that a sentence remains on record even if the judgment on the "main" charge were reversed on appeal. Also, the additional judgments might have adverse collateral consequences apart from the sentence. (4) The trial court might pronounce a judgment of conviction and sentence on only the gravest charge and dispose of the other charge or charges by an order reciting the charge and the verdict or plea of guilty, postponing further disposition while awaiting the outcome of an appeal if one is taken. However, this procedure would sacrifice the possibility of an immediate appeal from the convictions on which judgment is postponed, and it might prejudice a defendant with respect to successful appeals by delaying the retrial on those charges for months or even years.

None of these solutions is wholly compelling as a matter of logic or compelled as a matter of statute. We believe another disposition is available. A trial court might pronounce a judgment of conviction on each of the charges, indicating the sentence he would impose if the conviction stood alone but suspending its execution (or suspending imposition of sentence), and accompany the judgment on each but the gravest charge with an order that the judgment is vacated by its own terms whenever the time for appeal has elapsed or the judgment appealed from has been affirmed. Such an order would make it clear on the record that the conviction on the secondary charge retains no legal effect in the absence of a further order reviving it in case a successful appeal from the judgment on the gravest charge is not followed by a retrial on that

charge. But since the use of such an order has not been argued in this case, we do not now decide that it should be used.

The order in the present case, as quoted at the beginning of this opinion, recited that the defendant had "heretofore been duly convicted of" both burglary and attempted theft. In the absence of any record of a preceding judgment of conviction in the case, we assume that "convicted" was meant as a reference to the verdict, and that the ORDER ON SENTENCE was the judgment. The order "considered, ordered and adjudged" that defendant "is guilty" of burglary and of attempted theft, and stated "the judgment of the court that he be sentenced to the OREGON STATE CORRECTIONS DIVISION" for a term of four years. This order pronounces a judgment of conviction on both charges. As stated above, the state confessed error in the Court of Appeals if the *Woolard* holding still governed the case. It does. Nor can the error be corrected simply by vacating the judgment of conviction on the attempted theft, since the record does not show whether the court would have imposed the same sentence if defendant had not attempted the theft.[25] Accordingly, the case must be remanded for resentencing and a judgment of conviction on the burglary count only.

Reversed and remanded.

HOWELL, J., specially concurring.

I dissented in *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971). It is obvious that the majority adheres to that decision. Any further expression of dissent would be an exercise in futility. I, therefore, concur in the result.

---

[25] We note that the amendment of ORS 137.120, requiring the court to state on the record the reasons for the sentence imposed, became effective after the date of the judgment in this case.

**TONGUE, J.,** dissenting.

With all due respect to the majority, its decision in this case and in *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971) are prime examples of how the courts in recent years, in their "quest for perfect criminal justice," have on some occasions not only usurped the powers of the legislature, but in doing so have "enacted" new "rules" of criminal procedure fraught with potential complications. *See* Fleming, *The Price of Perfect Justice* (1974).[1]

---

[1] In his book *The Price of Perfect Justice* (1974), Macklin Fleming makes the following observations which have relevance to the problem presented in this case and the solution to that problem as adopted by the majority.

"* * * [T]oday's dominant legal theorists, impatient with selective goals, with limited objectives, and with human fallibility, have embarked on a quest for perfection in all aspects of the social order, and in particular, perfection in legal procedure." (p. 4)

"* * * * *"

"* * * [W]hen we aim at perfect procedure, we impair the capacity of the legal order to achieve the basic values for which it was created, that is, to settle disputes promptly and peaceably, to restrain the strong, to protect the weak, and to conform the conduct of all to settled rules of law." (p. 6)

"* * * * *"

"During the past decade the supremacy of written, recorded law has been sharply challenged by the growth in popularity of * * * legal theories * * *. Written law is now routinely qualified, rewritten, or repealed by the courts acting under the authority of natural law, fundamental law, or divine revelation." (p. 114)

"* * * * *"

"* * * [T]he habit has grown apace of replacing legislative acts of a popular assembly with decrees of a privy council, more specifically decrees of the courts. In this devaluation of written law and of legislative authority of popular assemblies, courts have boldly undertaken to rewrite laws of every description, from criminal procedure, to rights of inheritance, to regulation of personal conduct, to state and federal election laws, to parole revocation, to abortion. *In entering upon such legislative tasks the courts find themselves creating, determining, selecting, and applying policy * * *.*" (Emphasis added) (p. 116)

"* * * * *"

"Frequently, a court is shown a tiny segment of a general problem and solemnly assured by the partisans before it that the tiny segment comprises the entire problem." (p. 120)

"* * * * *"

## 1. *The law prior to Woolard was straightforward and clear.*

Prior to the decision by the majority of this court in *Woolard* it appears to have been clear that because there were two separate statutes defining the crimes of burglary and larceny, each with a separate penalty provision,[2] and because the two crimes involved some different "ingredients" or "elements," so as to require evidence or proof of some different facts, a defendant who committed burglary and also committed larceny or attempted larceny after breaking into a building could properly be convicted and sentenced for both crimes. *State v. Kennedy,* 250 Or 422, 443 P2d 226 (1968). As held in *State v. Stewart,* 11 Or 52, 53, 4 P 128 (1883):

> "'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal, or conviction, under either statute, does not exempt the defendant from prosecution and punishment under the other.' (Gray, J., in Morey v. Commonwealth, 108 Mass 434)"

*See also State v. Weitzel,* 157 Or 334, 340, 69 P2d 958 (1937), *State v. McDonald,* 231 Or 48, 52-53, 365 P2d 494 (1962), and *Gore v. United States,* 357 US 386 (1958).

This was a clear and workable rule and one which was based upon the assumption that it was the prerogative of the legislature to define crimes and to provide for punishment for each of such crimes. As we noted in *State v. McDonald, supra,* 231 Or at 52-53, it was also apparently in accord with the rule as adopted

---

"This narrow, limited presentation normally focuses the decision of a court on a single aspect of a general problem. But the problem itself remains, and as with the hydra, as soon as one head is cut off, nine others appear. The court is then forced to attack the nine other heads, and in so doing it tends to pile complication on complication until what should be simple, clear and direct becomes complicated, obscure, and tortuous." (p. 120)

[2] ORS 164.230 and ORS 164.320.

by most jurisdictions which had considered this question.[3] That rule was criticized by the American Law Institute, but its proposed solution to the problem was the adoption of a *statute* (Model Penal Code § 221.1) which would prohibit only the imposition of *sentences* for both offenses in some, but not all cases,[4] rather than the change of that rule by judicial decision to prohibit not only sentences, but convictions, for both offenses.

Consistent with that rule, this court has held that whether a defendant may in fact be convicted and sentenced for two offenses arising out of the same course of conduct depends upon the intent of the

---

[3] *See, e.g., Morgan v. Devine,* 237 US 632 (1915), *State v. McAfee,* 78 NM 108, 428 P2d 647 (1967); *Matey v. Sacks,* 284 F2d 335, 337 (6th Cir 1960)(construing Ohio law); *State v. Byra,* 128 NJL 429, 26 A2d 702 (1942), *aff'd* 129 NJL 384, 30 A2d 49 (1943), *cert den* 324 US 884 (1945). *Contra, People v. McFarland,* 58 Cal 2d 748, 26 Cal Rptr 473, 376 P2d 449, 455-57 (1962).

[4] Model Penal Code § 221.1 (American Law Institute Tentative Draft No. 11, 1960) would provide as follows:

"(3) *Duplicate Penalties.* A person may not be sentenced on the basis of the same conduct both for burglary and for the offense which it was his purpose to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constituted a felony of the first or second degree."

The "comment" on that proposed statute is as follows:

"*Duplicate Penalties.* The provision in subsection (3), restricting duplicate penalties for burglary and for the offense which the burglar intended to carry out is designed to prevent the abusive practice, referred to in Comment 1, of imposing consecutive sentences for burglary with intent to steal and for the actual theft. Since the severe penalties for burglary are devised largely to provide aggravated penalties for theft committed by lawless intrusion, it is irrational to *cumulate* theft and burglary penalties. The same reasoning holds for burglary to commit any other minor crime. However, where the ultimate offense contemplated by the burglar is a felony of the second degree, there is no injustice in allowing the judge to consider whether the serious offense was not specially aggravated by the circumstances of intrusion. This could be done, under Sections 6.07 and 7.03 of this Code, by finding the culprit guilty as a 'multiple offender,' making him subject to an 'extended sentence' with a maximum of 15 years where both offenses are felonies of the second degree."

It should be noted that the Oregon Legislature, in drafting and adopting the new burglary statutes (ORS 164.205 et seq.) in 1971 had Model Penal Code § 221.1 before it and did not adopt a section comparable to § 221.1(3), quoted above. Oregon Criminal Code of 1971, p. 180 (1975).

legislature in enacting the statutes creating the offenses. *State v. Howe,* 27 Or 138, 44 P 672 (1895); *State v. Nodine,* 121 Or 567, 256 P 387 (1927); *State v. Gerritson,* 124 Or 525, 265 P 422 (1928). *See also State v. Woolard, supra,* and *Gore v. United States, supra.*

It follows, in my opinion, that when, as in this case, the legislature has defined two separate crimes—burglary and larceny (or attempted larceny)—which have separate and distinct elements requiring different proof, and for which specific punishments have been provided, there is at least a "presumption" that the legislature intended that a defendant may be separately convicted and sentenced for both of these crimes. Such a "presumption" should only be overcome upon a showing that:

(1) There is an express legislative directive (in the form of a statute) that a conviction or sentence may be imposed for one offense only; or

(2) Such an intent clearly appears from the legislative history of the statutes in question, or

(3) Constitutional requirements such as the prohibition of double jeopardy make separate convictions or sentences improper.

## 2. *The holding in Woolard.*

In *State v. Woolard, supra,* the court recognized (at 235) that whether a defendant can be convicted and sentenced for two offenses arising out of the same course of conduct "depends upon the intent of the legislature in enacting the statutes creating the offenses." The court also recognized (at 236) that "[t]he Oregon statutes * * * do not expressly indicate any legislative intent."

But instead of holding that, in the admitted absence of such an "indication" of legislative intent to prohibit the conviction and sentencing of a defendant guilty of both burglary and larceny for both offenses, a defendant can be convicted and sentenced for both crimes (in accordance with the provisions of ORS 164.230 and

[607]

164.320), the majority in *Woolard* reasoned as follows (at 237-38):

> "The most significant feature of the two statutes is that the mere preliminary act of breaking and entering a dwelling with intent is regarded by the legislature as being much more anti-social than larceny from a dwelling. This is exhibited by the maximum penalty for burglary being fixed at 15 years, whereas the maximum for larceny from a dwelling is seven years. The heinous nature with which the legislature regarded the preliminary act of breaking and entering a dwelling is further accented by the fact that an intent to commit a serious crime like larceny or any other felony is unnecessary. The requisite intent for burglary exists if there is an intent to commit any crime, no matter how trivial. State v. Huntley, 25 Or 349, 35 P 1065 (1894) (intent to commit a misdemeanor).

> "Under these circumstances, *in the absence of some indication that the legislature had a contrary intent,* we interpret our statutes to provide that one breaking and entering with the intent to commit larceny can only be convicted and sentenced for either burglary or larceny, but not for both." (Emphasis added)[5]

### 3. *The majority opinion in this case.*

The majority opinion in this case recognizes (at 587) that "the attribution of the *Woolard* holding to legislative intention" was "speculative." Because, however, the validity of the *Woolard* holding (that a person charged with both burglary under ORS 164.230 and larceny under ORS 164.320 cannot be convicted and sentenced for both statutory offenses) must necessarily rest upon a finding that the legislature intended to prohibit conviction and sentencing for both statutory offenses, the majority necessarily seeks to discover some basis beyond "speculation" to support a finding of such a legislative intent.

---

[5] At that time I joined the majority in *Woolard.* Since then, and for reasons which appear in this dissent, I have concluded that *Woolard* was wrongly decided.

Being unable to find either any statutes or legislative history directly in point, the majority (at 591) embarks upon a "search for a rational *policy*" toward conviction and sentencing. In the course of that "search" the majority discusses at length the statutes of other states, what other courts have held and what legal scholars have said. Because, however, the holding in *Woolard* must rest upon a finding of the intention of the *Oregon* legislature, that discussion by the majority is of little, if any, relevance other than as a matter of academic interest.

The majority then (at 591-596) discusses various Oregon statutes, none of which is directly in point, and purports to discover from them a "penal policy" that "attach(es) importance to the 'singleness' of a defendant's criminal objective rather than only to the 'singleness' of his acts" (a theory not advocated by either party in this case). In the course of that discussion the majority considers the 1971 and 1973 revisions of the criminal code and criminal procedure code and notes (at 591) that these statutes (enacted since *Woolard*) "do not contain a specific provision governing conviction and sentence on multiple charges" in cases such as this one. The majority then places great emphasis upon the enactment in 1977 of an act relating to prison sentences and parole. Oregon Laws 1977, Chapter 372. The majority (at 592) describes the provisions of that act as designed "to compel principled analysis and to reduce disparity in the disposition of offenders at each stage of the process." The majority observes (at 19):

> "* * * Taken together, the legislature's recent enactments reflect a continuing *policy* to bring rationality and proportionality to the penal dimension of criminal law * * *." (Emphasis added)

The majority also relies upon ORS 131.505(4), which defines "criminal episode" as:

> "* * * continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is

directed to the accomplishment of a single criminal objective."

and on 131.515(2), which requires the joinder for purposes of prosecution of "two or more offenses based on the same criminal episode." The majority comments (at 595) that these statutory provisions reflect the view of the legislature that:

> "* * * Multiple statutory violations are to be dealt with in one prosecution, not merely because they involve evidence common to the time, place and circumstances, but because the responsibility of the defendant for his conduct in pursuit of one 'criminal objective' should be fully determined in one proceeding."

From the foregoing analysis of the recent legislative enactments, the majority concludes (at 596):

> "In the present case, as in State v. Woolard, *supra,* there is no dispute that the offenses of which defendant was convicted arose in a criminal episode marked by a single objective—theft—as well as by continuity of time and place. Accordingly, *nothing in the statutory policies enacted since Woolard appears to contradict the court's conclusion in that case* that when a breaking and entering with intent to commit a crime is followed by the commission of the intended crime, the penalty is to be limited to that prescribed for the offense carrying the greater potential sentence. We reaffirm that conclusion. That is the specific issue, and it is all we decide in this case. * * *" (Emphasis added)

Applying the rule of Woolard, as supported by these "statutory policies," to the facts of this case, the majority then concludes that because *Woolard* bars both multiple sentences and the entry of multiple convictions, and because the order in this case imposes a four-year sentence after reciting that defendant had "heretofore been duly convicted" of both burglary and attempted theft, this case must be remanded both for resentencing and for entry of a judgment of conviction on the burglary count only.

4. *The fallacy of the majority's analysis of Oregon statutes.*

(a) *The "policy" argument.*

The analysis by the majority of the "policy" of recent legislative enactments provides no support for the proposition that the legislature intended that a defendant could not be convicted and sentenced for both burglary and larceny (or attempted larceny) arising out of the same "criminal episode." The "policy" underlying the 1977 statute relating to prison sentences and parole (Or L 1977, ch 372), although "designed to compel principled analysis and to reduce disparity" and "to bring rationality and proportionality to the penal provisions of criminal law" (as stated by the majority), is fully as consistent with the concept of separate sentences for separate crimes of burglary and larceny (or attempted larceny) as with the majority concept of a single sentence for burglary only. Under that penal plan, trial courts are provided with presentence reports and must state on the record the reasons for the sentences imposed (ORS 144.790(1) and 137.120(2)). The sentences are for an indeterminate period of time, with the trial court stating only the maximum term for the crime (ORS 137.120(2)). Sentences which are excessive, unusual or cruel may be reviewed by the Court of Appeals (ORS 138.040 and 138.050). Moreover, apart from the sentencing court's statement in its sentence of the maximum term for the crime, it is the Board of Parole that determines the *actual* duration of imprisonment and in doing so seeks to achieve "[p]unishment which is commensurate with the seriousness of the prisoner's conduct," after considering "aggravating or mitigating circumstances." (ORS 144.780(2)(a) and ORS 144.785(1)). Thus, regardless of whether a defendant in a burglary-larceny case may be "convicted and sentenced" for both offenses, or only for burglary, the overall "seriousness" of defendant's conduct, including all "aggravating" circumstances, is to be considered in determining the duration of imprisonment.

[611]

To take two examples, defendant A, who breaks into the house of an aged and blind woman with intent to commit larceny, but takes nothing and leaves upon seeing her condition, would receive a lighter sentence than defendant B, who breaks into the same house the following night and steals all of the cash in her purse, her cane and her seeing-eye dog. In the latter case a proper sentence, and the "duration of imprisonment," would be the same if imposed only for burglary, but considering the overall "seriousness" of the offense and the "aggravating circumstances," as if imposed technically for both burglary and larceny, but considering the same factors. Surely the majority cannot mean to say that the sentence of defendant B must be the same as defendant A because the sentence can only be imposed for the crime of burglary.

Similarly, the "policy" underlying ORS 131.505(4) and 131.515(2) to provide that offenses "based upon the same criminal episode" (that is, "directed to the accomplishment of a single criminal objective") shall be *prosecuted* together has little, if any, relevance to the question whether separate sentences may be imposed for those offenses. Again, it is just as consistent with these provisions (and perhaps more so) to impose separate sentences for each offense for which the defendant is found guilty in such a consolidated trial as it is to provide that a sentence may be imposed for one offense only.

Perhaps this is the reason why the majority could go no further than to state (at 596) that "nothing in the statutory policies enacted since *Woolard appears to contradict* the court's conclusion in that case." (Emphasis added) For the majority to then and on that basis, however, reaffirm the rule in *Woolard* that when burglary is followed by the commission of larceny in the same criminal episode the defendant may only be convicted and sentenced for the burglary, is for it to make the same mistake as made by the majority in *Woolard.* As previously noted, the court in *Woolard* reached its conclusion of a conviction and

[612]

sentence for the burglary only based on "speculation" as to what the legislature intended and on "the absence of some indication that the legislature had a contrary intent." (259 Or at 238)

In my view, such a holding gives insufficient weight to the "presumption" that should exist that, when the legislature defines and sets penalties for separate crimes such as burglary and larceny which require different proof of their differing elements, the legislature intended such crimes to carry separate sentences, even when the crimes arose out of the same criminal episode. The burden should be on the defendant to show either by express statutory provision, by clear indications of legislative intent, or by constitutional limitations, that such apparent intention cannot prevail. Both the majority in this case and in *Woolard,* however, would in effect establish a contrary "presumption" by the holding that a defendant found guilty by a jury of both burglary and larceny can be convicted and sentenced for only one crime in the absence of "legislative indications to the contrary."

Even if there were no "presumption" established one way or the other, however, it is my opinion that the result of the majority's purporting to find an "indication" of legislative intent based solely upon a finding of legislative "policy" is either to adopt a new and novel "rule" of statutory construction for which the majority has cited no authority, or is an attempt to embark upon a course of judicial "rule making" in criminal procedure, contrary to the provisions of ORS 1.002(1):

> "* * * The Supreme Court may make rules and orders necessary or appropriate to the exercise of its administrative authority and supervision, but this section does not authorize the Supreme Court to make rules of civil or criminal procedure. * * *"

(b) *Other statutes enacted since Woolard.*

In 1971 the legislature enacted ORS 161.505, which states:

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state * * *."

Prior to the enactment of that statute and prior to *Woolard,* the legislature, by ORS 164.230, had defined the offense of burglary and had provided for a sentence of imprisonment for that offense, and by ORS 164.320 had also defined the offense of larceny and had provided for a sentence of imprisonment for that offense.

At the time of the enactment of ORS 161.505 it had been held in *Woolard,* based upon "speculation" as to legislative intent as of that date, that there could be no sentence to a term of imprisonment of the defendant in that case for the offense of larceny even though he had been found guilty of that offense by a jury. In my opinion, however, by the enactment in 1971 of ORS 161.505 the legislature made it clear that a sentence in a case such as this one is proper for any conduct, including larceny, for which a term of imprisonment is provided by law, upon conviction by a jury of such an offense. Under the holding by the majority, however, one who is convicted of burglary by the entry of a building could not also be convicted of larceny and no sentence could be imposed for that offense, even though ORS 164.320 specifically provides for a penalty for that offense. In my opinion, and with all due respect to the majority, such a result is at least contrary to the "policy," if not the direct intent of the legislature as expressed by the enactment in 1971 of ORS 161.505.

In addition, ORS 131.505(2), enacted in 1973, provides that:

"When the same conduct or criminal episode violates two or more statutory provisions, *each such violation constitutes a separate and distinct offense.*" (Emphasis added)

Although that provision is a part of a statute relating to double jeopardy, as pointed out by the majority, it

[614]

nevertheless is an expression of a legislative policy which is far more consistent with the view that there may be separate convictions and sentences for each offense arising from the same "criminal episode" (such as burglary and larceny, as in this case) than it is with a legislative policy that would forbid the conviction and sentencing for both of such offenses, as held by the majority.

In short, the enactment since *Woolard* of ORS 161.505 and 131.505(2) and the total absence of direct legislative support for the majority's conclusion, when combined with the existence of a "presumption" that when the legislature defines separate crimes with separate elements and penalties, convictions and sentences may be imposed for both crimes, compels me to the conclusion that the proper result in this case would be to hold that a defendant may be convicted and sentenced for both burglary and larceny arising out of the same criminal episode. Such a holding would also avoid the complications inherent in the result reached by the majority, as next discussed.

At the very least, and even if one were to accept the proposition that multiple sentences may not be entered, it is my opinion that both the majority in this case and in *Woolard* are wrong in holding that multiple *convictions* may not be entered. This holding does not follow from the asserted rationale in *Woolard* (stated above) that the disparity in the sentences for burglary and larceny indicates a legislative intent to include the punishment for larceny within the punishment for burglary. Indeed, the Model Penal Code section cited in *Woolard* (259 Or at 238) and quoted above (n. 4) prohibits only multiple sentences for burglary and larceny, not multiple convictions.

5. *Complications arising from the majority opinion.*

Wholly aside from problems of vagueness and ambiguity arising from the manner in which the majority opinion is written, the majority recognizes that complications will arise from its conclusion that a

conviction and sentence can be entered only on the charge of burglary because of the questions that then arise relating to what may happen in the event of reversal on appeal of the burglary charge to the guilty verdicts returned by the jury on the charge of larceny. To solve this problem the majority proposes an elaborate plan involving the pronouncement and suspension of judgment and sentence on the larceny charge, with an order that such judgment and sentence are vacated when the time for appeal from the burglary judgment has elapsed or the burglary judgment has been affirmed. This complex procedure stands in sharp contrast to the simplicity of entering a conviction and sentence for each offense, a procedure which trial and appellate courts can handle without difficulty. Moreover, as previously mentioned and as a practical matter, due to Oregon's new sentencing and parole statute, the same result is likely to follow in terms of the duration of imprisonment of the defendant from both the complicated proposal by the majority and the simple system in effect prior to *Woolard.*

In addition, the reasoning by the majority that the trial court can neither convict nor sentence for the lesser crime, when taken to its logical conclusion, leads to the proposition that the trial court in sentencing for burglary cannot even *consider* the crime committed within the building, or even whether a crime was committed within the building. Thus, to use the same example previously suggested, the majority approach would logically require the same sentence for burglary for a defendant who broke into the house of an aged and blind woman intending to steal something within, but who then changed his mind and left without taking anything, as for a defendant who broke into the same house and stole all of her money, her cane and her guide dog.

Two other problems noted by the court in *Woolard* are also perpetuated by the majority opinion here. The first problem follows from the reasoning that the

heavy penalty for the crime of burglary—which includes the intent to commit a crime inside—was meant to also embrace the penalty for the crime which followed. What happens when the burglar intending one crime commits a different crime after entry? The second question is what happens when the crime committed inside carries a greater penalty than that for burglary? In *Woolard,* the court held that such a defendant should be sentenced and convicted for the more serious crime only. Once again, however, would the trial judge be prohibited from considering in the determination of an appropriate sentence that such crime (i.e., rape) was committed after the defendant broke into a house, as opposed to the commission of the same crime under different circumstances?

As a final problem, we note that the majority would "leave it to the Court of Appeals in the first instance to develop criteria for multiple convictions and sentencing" in a number of kinds of cases described by the majority (at 598-599). In short, the courts of this state can look forward to a continuing wrestling match with the question of multiple sentencing under the approach taken by the court in *Woolard* and by the court today.

None of these problems would arise if this court had not, by judicial legislation or "rule making," replaced a straightforward rule of separate convictions and sentences for burglary and larceny with a holding—unsupported by any legislative directive—that such multiple sentences and convictions were not intended by the legislature.

6. *The order in this case.*

As noted by the majority, the order entered by the trial court in this case reads as follows:

"The defendant, GASTON CLOUTIER, having heretofore been duly convicted of the crime of 'COUNT I: BURGLARY IN THE FIRST DEGREE and COUNT II: ATTEMPTED THEFT IN THE SECOND DEGREE,' upon the verdict of a jury on August

18, 1977, and this being the time set for the imposition of sentence; * * *

"It is hereby CONSIDERED, ORDERED and ADJUDGED that GASTON CLOUTIER is GUILTY of the crime of 'COUNT I: BURGLARY IN THE FIRST DEGREE and COUNT II: ATTEMPTED THEFT IN THE SECOND DEGREE,' and it is the judgment of the Court that he be sentenced to the OREGON STATE CORRECTIONS DIVISION for a period of FOUR (4) YEARS * * *."

This order shows on its face the entry of convictions for both burglary and attempted theft in the second degree. The order does not, however, say that a sentence was imposed not only for burglary, but that a sentence was also imposed for attempted theft. In other words, this is not a case such as *Woolard,* in which it clearly appeared from the record that the defendant was separately sentenced on the burglary and the larceny, with the two sentences to run concurrently.

In addition to the fact that this order does not show that separate sentences were imposed, the defendant raised no objection in the trial court to the form of the order. It follows, in my opinion, that even if the majority in this case and in *Woolard* was correct in holding that the defendant in such a case cannot properly be given a sentence based upon his conviction by a jury for both burglary and attempted larceny (a holding with which I strongly disagree), this court should nevertheless affirm the order of the trial court in this case.[6]

---

[6] As in *State v. Classen,* 285 Or 221, 590 P2d 1198 (decided February 13, 1979), it should be noted that this is also a criminal case which was not decided within the 90 day period adopted by the American Bar Association as a "standard" for appellate courts in all but cases of "extraordinary complexity." Indeed, this case was not decided until nearly eleven months after oral argument.

The concurring opinion in *Classen* set forth comparative statistics for the years 1976, 1977 and 1978 relating to the general problem of delays on appeals to this court during 1977 and 1978. (285 Or at 241) Since December 31, 1978, the court, although making some progress in its disposition of

petitions for review, has made little or no progress in its disposition of cases after oral argument on the merits despite a much lighter case load, as demonstrated by the following comparative statistics (the latest available):

|  | Four Mo. Ending 4/30 | | Percentage Increase Or Decrease |
|---|---|---|---|
|  | 1978 | 1979 |  |
| Number of cases heard on oral argument | 92 | 64 | − 30% |
| Elapsed days from date case "at issue" to date of decision | 133 | 198 | + 49% |

During May and June a total of only 14 cases were to be heard on oral argument. As of this date, however, 24 cases that had been heard on oral argument and had been "assigned" to members of the court were still "unwritten" by the preparation of proposed opinions after a period of 90 days, as compared with 23 "assigned but unwritten" cases over 90 days old as of December 31, 1978.