Argued and submitted May 5, affirmed June 30, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# TONI JEAN HAMILTON,
*Petitioner.*

(TC Nos. C 79-05-31465, C 79-05-31466,
C 79-05-31467, C 79-05-31468, C 79-05-31469,
C 79-05-31470, CA No. 16512, SC No. 27590)

634 P2d 208

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the petition was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James M. Redden, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

PETERSON, J.

**PETERSON, J.**

Defendant was convicted of five counts of forgery in the first degree (ORS 165.013) and one count of theft in the first degree (ORS 164.055). She contends that her actions did not constitute forgery under ORS 165.013. She further contends that all of her convictions should be combined into one conviction under ORS 131.505(4).

Defendant was employed at John Snyder Tool Co., Inc., as an assistant bookkeeper. The normal procedure for handling the deposit of checks was as follows: when checks were received in payment of accounts receivable at her employer's office, she stamped the checks with a restrictive endorsement ("for deposit only"), took them to the bank, and deposited them into her employer's account.

On six occasions over a twenty-day period, defendant crossed out the words "for deposit only," initialed the change, signed her own name, cashed the checks, and retained the proceeds. For illustration, the back of one such check is set forth below.

As to each of the six transactions, defendant was charged in a two-count indictment, one count for theft and one count for forgery. Following her conviction on all twelve counts, the trial court combined the two counts in each indictment into one, resulting in five convictions for

---

[1] Defendant's true name at the time was Toni Jean Kile.

forgery in the first degree and one conviction for theft in the first degree. The validity of the forgery convictions involves the definition of first and second degree forgery, "forged instrument," "written instrument," and "false alteration."

The crime of forgery in the first degree is defined in ORS 165.013. The crime is committed if one

"* * * violates ORS 165.007 and the written instrument is or purports to be any of the following:

"* * * * *.

"(c) A deed, will, codicil, contract, assignment, commercial instrument or other document which does or may evidence, create, transfer, alter, terminate, or otherwise affect a legal right, interest, obligation or status * * *."

Second degree forgery is defined in ORS 165.007 and is committed if an actor

"(1)    * * * with intent to injure or defraud * * *

"* * * * *.

"(b)    Utters a written instrument which he knows to be forged."

ORS 165.002(8) defines "forged instrument" as

"* * * a written instrument which has been falsely made, completed or altered."

"Written instrument" is defined in ORS 165.002(1) as:

"* * * any paper, document, instrument or article containing written or printed matter or the equivalent thereof, whether complete or incomplete, used for the purpose of reciting, embodying, conveying or recording information or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."

ORS 165.002(6) concerns false alteration and provides:

"(6) To 'falsely alter' a written instrument means to change, without authorization by anyone entitled to grant it, a written instrument, whether complete or incomplete, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that the instrument so altered falsely appears or

purports to be in all respects an authentic creation of its ostensible maker or authorized by him."

The defendant asserts that her motion for acquittal of forgery in the first degree should have been granted. In her motion for acquittal, the defendant argued that even after the alteration of the endorsements, each check remained "* * * the authentic creation of its ostensible maker. There is, in fact, no forgery in that the name [on] the check is the true name of the person that was endorsing it."

The issue raised by the defendant is whether these checks were "falsely altered" under ORS 165.002(6) so that the instruments "* * * falsely appear[ed] or purport[ed] to be in all respects an authentic creation of [their] ostensible maker or authorized by him." The outcome of this case turns on the meaning of the term "ostensible maker," as used in ORS 165.002(6).

The terms "ostensible maker" and "maker" are not defined in ORS chapter 165. In fact, they are defined in no Oregon statute. "Ostensible" is defined in *Windle, Adm'x et al v. Flinn et al,* 196 Or 654, 676, 251 P2d 136 (1952), meaning: "Seeming," "professed," or "pretended." As used in the statute, a word which well characterizes its true meaning is "apparent."

■ "Maker" has many meanings, depending upon the context in which it is used. Black's Law Dictionary, 5th Edition, at 861, defines it as follows: "One who makes, frames or ordains; as a 'law maker.' One who makes or executes; as the maker of a promissory note. One who signs a note to borrow. One who signs a check; in this context, synonymous with drawer." We do not believe that the legislature meant to limit the definition of "maker" to the specialized meaning in commercial instruments, since with this definition there could be no maker of a deed, will or codicil, and they are all enumerated in ORS 165.013. Rather, we believe that "maker" is to be understood in the broad sense, as "one who makes or executes." In this sense, an endorser is also a maker, since the endorser is executing the endorsement.

■    A provocative issue is raised by the defendant's contention that, because she signed her own name, "* * * there is nothing falsely stated on the checks themselves." She relies upon an article by Professor Harold G. Hanbury entitled "Forgery and its Effects," The Jubilee Lectures of the Faculty of Law, University of Sheffield 29, 32-33 (O.R. Marshall ed 1960), in which these statements appear:

"a)   Only a writing or document can be forged.

"b)   A writing is forged only when it *tells a lie about itself.*

"c)   The offending statement must cause the *document itself* to seem other than what it is.

"d)   The falsification must be of the *document itself;* forgery is not constituted by making false statements in or about it.

"e)   There can be *no forgery by non-feasance.*

"f)   The making of a false statement in the name of a fictitious person is forgery.

"g)   The falsity must be *material.*

"h)   The offence may be complete without any publication or uttering of the forged document." (Emphasis in original.)

To the same effect is Clark and Marshall, A Treatise on the Law of Crimes 957, § 12.34 (7th ed 1967), wherein it is stated:

"* * * It is forgery to sign another's name to a note, without authority and with intent to defraud, and thus make the instrument appear to be the note of the person whose name is signed; but it is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has authority to bind another by doing so, or for a person to sign another's name 'by' himself as attorney in fact, for in such a case the instrument is not falsely made, but is just what it purports to be, and the signer is guilty of false pretenses only. * * *" (Footnotes omitted.)

Had defendant simply endorsed her name to the check, this case might come within the rule she espouses. But in addition to signing her name, the defendant also altered the check, changing the endorsement from a restrictive endorsement (ORS 73.2050(3)) to a special endorsement (ORS 73.2040(1)), in order to cash the checks.

True, there is evidence that, in addition to making the alterations, the defendant made representations to the bank tellers that the alterations were made to obtain petty cash for the business. The defendant contends that this is "the only falsehood" in the case. This argument requires us to ignore the alterations themselves.

That defendant's conduct may have created a foundation for guilt of other crimes does not establish her innocence of the crimes charged. In a very real sense, the endorsements, as altered, told a lie about themselves, making the documents seem to be other than they were. In making the alterations, the defendant intended to make it appear that the altered endorsements were authentic and that the alterations had been authorized by the ostensible maker.

Whatever the rule at common law under the authorities cited above, upon which defendant relies, the decision in this case turns on the meaning of Oregon's forgery statutes, specifically the definition of "falsely alter." When reduced to its simplest terms (so far as this case is concerned) the ORS 165.002(6) definition of "falsely alter" involves these factors:

1.  Changing a written instrument

2.  Without authorization

3.  By means of insertion of new matter

4.  So that the instrument purports to be either (a) an authentic creation of its ostensible maker or (b) authorized by the ostensible maker.

Without question, elements 1 through 3 are here present. As to the fourth element, there is substantial evidence, convincing beyond any reasonable doubt, that the checks, as altered, were believed to be authentic, were treated as authentic, were acted upon as being authentic, and that the instrument had been so altered that it purported to have been authorized by the employer. That defendant contemporaneously may have made representations in addition to the alterations does not require that we cloak her exclusively within those representations and exonerate

her by saying that "forgery is not constituted by making false statements."

When the restrictive endorsement was originally stamped on the back of the check, the employer became the actual maker of the endorsement as well as the ostensible maker. As such, the check with its endorsement was what (to paraphrase ORS 165.002(6)) it appeared or purported to be — "an authentic creation of its ostensible maker or authorized by him." The trier of fact could find that, by virtue of defendant's employment, and after the alteration was made, the endorsement appeared or purported to be either (a) "an authentic creation of its ostensible maker" or (b) "authorized by him." But the altered endorsement was not that of its ostensible maker (the employer) nor had it been authorized by the employer.[2]

The defendant also relies on cases which hold that an employee who is authorized to draw checks by an employer is not guilty of forgery when the employee draws a check payable to a fictitious payee, cashes it, and pockets the money. *See People v. Hoffman,* 91 Misc 2d 525, 398 NYS2d 239 (1977). There a New York court held that the use of a fictitious payee was permitted under the Uniform Commercial Code and therefore the defendant neither falsely made nor falsely altered the instrument. The court held that the defendant may be guilty of larceny, but not forgery. 398 NYS2d at 240. Here, unlike *Hoffman, supra,* the defendant was not authorized to so "make" the instrument. Even though the defendant signed her own name, there was evidence that the writing, as altered, had the appearance of an authorized act and thus told a lie about itself so that it seemed to be other than it was.[3]

---

[2] The only issue raised by the defendant's motion for acquittal was whether there could be a forgery under ORS 165.013 in light of the fact that the defendant's true name was endorsed on the check. She made no further contention that, merely by examination of the check itself, a person to whom the check was negotiated would conclude that the check, as altered, was neither (a) an instrument which, as altered, "falsely appears or purports to be in all respects an authentic creation of its ostensible maker" nor (b) "authorized by him."

[3] *See* H. G. Hanbury, "Forgery and its Effects," The Jubilee Lectures of the Faculty of Law, University of Sheffield 29, 32-33 (O. R. Marshall ed 1960).

Defendant further contends that "the trial court erred in failing to sentence defendant on only one conviction; * * * [that] defendant had a single criminal objective: to appropriate her employer's money to her own use. Her actions constitute one scheme to defraud and involve a single victim." She bases these contentions on the definition of "criminal episode" and relies on *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979).

Criminal episode is defined in ORS 131.505(4) as "* * * continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." Although there is identity of victim and offender as to each of the transactions, the checks were cashed over a 20-day period, at different times, and the conduct was neither continuous nor uninterrupted. *See State v. Garcia,* 288 Or 413, 429, 605 P2d 671 (1980).[4] Defendant stresses the fact that there was a single criminal objective, which was to obtain money. This is true of most multiple forgeries, and if carried to a logical conclusion would mean that the forging of numerous checks at various times over several years would constitute but one crime, and would authorize but one sentence. This is not the intent of the statute. Moreover, such analysis reads out of the statute the requirement that the conduct be "* * * continuous and uninterrupted."

*State v. Cloutier, supra,* relied on by defendant to support the combination of the six convictions into one, only requires that the forgery and theft counts within each indictment should be combined to form one conviction. The acts here involved were "* * * discontinuous unlawful acts

---

[4] *Compare State v. Welch,* 264 Or 388, 505 P2d 910 (1973):

"At the same time and by the use of one deposit slip, defendant deposited in his bank account two checks purportedly drawn in defendant's favor by a third party on an account in a California bank. Defendant drew the money represented by the checks from his account before his depositing bank learned that the account upon which the checks were purportedly drawn did not exist. He was charged on a separate count for passing each of the two checks. The jury found the checks to be fictitious and known to be so by defendant, who intended to use them to defraud the bank, and convicted him on both counts." 264 Or at 389.

We held this transaction encompassed but one offense, that "* * * publishing the two checks was a single transaction." *Id.* at 395.

on separate occasions, each upon a new or renewed decision to accomplish a distinct [albeit identical] criminal objective," *State v. Cloutier, supra,* 286 Or at 599, and the imposition of separate sentences for each of the six convictions was proper.

Affirmed.