Argued and submitted June 29, reversed September 14, 1988

## STATE OF OREGON,
*Respondent,*

*v.*

## CLAUDIO GUNN BLAKE,
*Appellant.*

(C87-03-31234; CA A46041)

760 P2d 1369

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for appellant.

Frank Gruber, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

VAN HOOMISSEN, J.

Warden, P. J., dissenting.

## VAN HOOMISSEN, J.

Defendant appeals his convictions on five counts of forgery in the first degree. ORS 165.013. He contends that the trial court erred in denying his motion for a judgment of acquittal. The question is whether a person commits forgery by signing his own name to a traveler's check issued to a different maker and, with intent to defraud, tendering the check for payment. We conclude that he does not and, therefore, reverse.

Defendant entered the Check Exchange with five stolen traveler's checks signed on the exemplar line by James L. Dayton, the maker. In front of the clerk, defendant countersigned those checks with his own name, Claudio Blake. He showed the clerk his own identification, telling the clerk that he was Claudio Blake. The clerk noticed that the countersignature name was not the same name as on the exemplar lines. He was concerned about the discrepancy and, after finding Dayton's name in the telephone book, called him. Dayton told the clerk that the checks had been stolen in a burglary four days earlier. The clerk then called the police. When the clerk did not return promptly, defendant left. The police found him nearby.

At trial, defendant moved for a judgment of acquittal on the basis of insufficient evidence. The trial court denied the motion, stating, in relevant part:

"The intent to defraud is self-evident. The element of completing and uttering is present by the physical act of the defendant signing the name on the bottom left-hand side of the traveler's check.

"Both sides have focused in on the question of the validity as being the pivotal issue. The defense contends that it has no value, its not a commercial instrument because on its face, it shows that the bottom signature differs from the top signature.

"I think I share the views of the prosecutor that the key here, in my analysis, is the purported aspect. I don't have my dictionary at hand, but I think a working definition of 'purported' would be something that represents, appears to be similar to and certainly, this is an incredible, illogical act on the part of the defendant, but in criminal conduct, you don't have to be clever or have to do things correctly.

"I'm very comfortable, [defendant's counsel] — you and I apparently just have a difference of opinion — I'm very comfortable with the concept that, as stupid as this crime was, this man's attempt [was] to negotiate a piece of paper which purported to be a traveler's check, *i.e.,* a commercial instrument.

"Based on the information contained in the stipulated police report, State's 1, I find that the defendant is guilty beyond a reasonable doubt of the material allegations of the charge, Forgery in the First Degree."

After he was convicted, counts 2, 3, 4 and 5 were merged with count 1 for the purposes of sentencing.

A person commits forgery in the first degree if he violates ORS 165.007 and the written instrument is or purports to be a commercial instrument.[1] ORS 165.013(1)(c). ORS 165.007(1) provides, in relevant part:

"A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"(a) Falsely makes, completes or alters a written instrument[.]"

ORS 165.002 provides, in relevant part:

"(4) To 'falsely make' a written instrument means to make or draw a complete written instrument in its entirety, or an incomplete written instrument which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, the ostensible maker did not authorize the making or drawing thereof.

"(5) To 'falsely complete' a written instrument means to transform, by adding, inserting or changing matter, an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by its ostensible maker.

"(6) To 'falsely alter' a written instrument means to change, without authorization by anyone entitled to grant it, a written instrument, whether complete or incomplete, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that the instrument so altered falsely appears or purports to be in

---

[1] A traveler's check is a commercial instrument. ORS 73.1040.

all respects an authentic creation of its ostensible maker or authorized by the ostensible maker."

Defendant argues that, by signing his own name, he did not do anything falsely. The state argues that defendant is the "ostensible" maker of the checks and that he intended them to be accepted as authentic.

The term "ostensible maker" is not defined in the statute. On an ordinary check, the maker is the drawer, the person who "makes or executes the instrument." *State v. Hamilton,* 291 Or 283, 287, 634 P2d 208 (1981). On a traveler's check, the maker is the person who signs the exemplar line and is intended to sign the countersignature line, that is, the person who provided the initial signature that the countersignature must match in order for the check to be payable. Therefore, defendant was not the maker.

There is authority for defendant's contention that a person cannot commit forgery by signing his own name.

"It is forgery to sign another's name to a note, without authority and with intent to defraud, and thus make the instrument appear to be the note of the person whose name is signed; but it is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has authority to bind another by doing so * * * for in such a case the instrument is not falsely made, but is just what it purports to be, and the signer is guilty of false pretenses only. * * * [Clark and Marshall, *A Treatise on the Law of Crimes* 957, § 12.34 (7th ed 1967).]" *State v. Hamilton, supra,* 291 Or at 288. (Footnotes omitted.)

Defendant tendered traveler's checks which the maker had signed on the exemplar lines. Defendant countersigned the checks with his own name. He did not sign them in a way that made them appear to be authentic; the checks themselves did not purport to be the authentic creation of their maker. Although defendant obviously intended to obtain money by fraud, as a matter of law his conduct did not constitute forgery under the statute. Therefore, the trial court erred in denying his motion for a judgment of acquittal.

Reversed.

**WARDEN, P. J.,** dissenting.

Because I would hold that defendant's conduct in attempting to cash the traveler's checks constitutes forgery in the first degree, I respectfully dissent.

I agree with the majority that the dispositive issue is whether defendant "falsely complete[d]" the traveler's checks by signing his own name on them. ORS 165.002(5); *see* ORS 165.013; ORS 165.007(1)(a). ORS 165.002(5) provides:

> "To 'falsely complete' a written instrument means to transform, by adding, inserting or changing matter, an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by the ostensible maker."

It is undisputed that, in an attempt to negotiate them, defendant completed the traveler's checks without the authority of their maker by signing a name, his own, on their countersignature lines. He thus represented, apparently not realizing that the two signatures must match, that the checks, bearing signatures on both signature lines, were the authentic creation of, or were authorized by, the ostensible maker. Accordingly, I would affirm defendant's convictions of forgery in the first degree.