Argued and submitted May 27, affirmed June 26, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# CARRIE MONIQUE FORD,
*Appellant.*

## 00-08-36694; A114064
72 P3d 93

David E. Groom, Acting Executive Director, Office of Public Defense Services, and Kimi Nam, Deputy Public Defender, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

■ Defendant appeals from her conviction for first-degree forgery for uttering two money orders that she knew to be forged.[1] ORS 165.013(1)(d); ORS 165.007(1)(b). At trial, defendant moved for a judgment of acquittal, arguing that the money orders were not forged because she was their ostensible maker and had signed her own name to them. The trial court denied the motion, and the jury convicted her. On appeal, defendant renews her argument that the money orders were not forged. Because the relevant facts are not in dispute, we review the trial court's conclusion for errors of law. *State v. Becker*, 178 Or App 602, 604, 37 P3d 252, *rev den*, 334 Or 327 (2002). We affirm.

Defendant worked as a cashier at a convenience store that sold Travelers Express money orders. The money order form identified Travelers Express as "ISSUER/DRAWER," and it contained a space for the signature of the purchaser, who was identified as "SIGNER FOR DRAWER." In addition, the form contained a blank for the designation of a payee, and it provided that it was "payable through Norwest Bank." Store policy prohibited employees from conducting the transaction when purchasing money orders for themselves. Travelers Express stated a similar policy on the back of each money order: "The business or person selling this money order cannot use it to pay personal or business obligations." Nevertheless, defendant printed two money orders for $500 and $250, respectively, and left the store without paying for them. After signing them on the line marked "PURCHASER, SIGNER FOR DRAWER" in her own name and designating her landlord as the payee, she used the money orders to pay her rent.

■ Defendant was convicted of first-degree forgery on the ground that she uttered the money orders knowing that they were forged. On appeal, defendant argues that the trial court erred in denying her motion for judgment of acquittal because, she contends, the jury could not have found an essential element of the crime beyond a reasonable doubt.

---

[1] Defendant was also charged with and convicted of first-degree theft. ORS 164.055. She does not challenge that conviction on appeal.

*See State v. Sosa-Vasquez*, 158 Or App 445, 448, 974 P2d 701 (1999). Specifically, defendant asserts that the money orders were not forged.

A person commits first-degree forgery by uttering one or more written instruments totaling at least $750 that he or she knows to be forged. ORS 165.013(1)(d); ORS 165.007(1)(b). To "utter" means "to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument or other object to another." ORS 165.002(7). As pertinent here, ORS 165.002(8) defines "forged instrument" as "a written instrument which has been falsely made * * *." ORS 165.002(4) provides:

> "To 'falsely make' a written instrument means to make or draw a complete written instrument in its entirety, or an incomplete written instrument which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, the ostensible maker did not authorize the making or drawing thereof."

Defendant does not contend that she did not utter the money orders when she transferred them to her landlord. Instead, she argues that the money orders were not forged instruments because she was their ostensible maker and, thus, she did not "falsely make" them. Defendant points out that she "went to the money order machine and punched in the amount * * * and printed two money orders from the machine. [Each] money order was 'an authentic creation of its ostensible maker' because defendant herself authorized the making of the money order." Defendant reasons that, because she signed her own name to the money orders, there was nothing false about them and each was "the true instrument which it purports to be." The state responds that Travelers Express was the ostensible maker of the money orders and that, because defendant was not authorized to make them, they were falsely made and, thus, were forged instruments.

■■ As framed by the parties' arguments, the dispositive issue is whether defendant or Travelers Express was the ostensible maker of the money orders. The answer to that question depends on the meaning of ORS 165.002(4). We

examine the text of the statute in context and, if necessary, its legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Statutory context includes previous judicial interpretations of the same or similar language, *State v. Meyer*, 183 Or App 536, 543, 53 P3d 940 (2002), and it also includes provisions of related statutes. *PGE*, 317 Or at 611.

The legislature has not defined the term "ostensible maker." In *State v. Hamilton*, 291 Or 283, 634 P2d 208 (1981), though, the Supreme Court construed the term. It held that, as used in a related statute, ORS 165.002(6),[2] a word that "well characterizes" the meaning of "ostensible" is "apparent" and that " 'maker' is to be understood in the broad sense, as 'one who makes or executes.' " *Id.* at 287. Thus, an ostensible maker is one who appears to have made or executed an instrument.

In this case, the face of the money orders themselves states that "TRAVELERS EXPRESS COMPANY, INC." is the "ISSUER/DRAWER." Further, defendant is not identified as the issuer or drawer; instead, she is shown as "PURCHASER, SIGNER FOR DRAWER." Even though defendant printed the money orders, she was authorized to do so only in her capacity as an agent of her employer, which was, in turn, an agent of Travelers Express. Because the money orders appeared to have been drawn and issued by Travelers Express, it, not defendant, was their ostensible maker. However, they were not, in fact, authorized by Travelers Express and, accordingly, they were falsely made.[3]

---

[2] ORS 165.002(6) provides:

"To 'falsely alter' a written instrument means to change, without authorization by anyone entitled to grant it, a written instrument, whether complete or incomplete, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that the instrument so altered falsely appears or purports to be in all respects an authentic creation of its *ostensible maker* or authorized by the ostensible maker."

(Emphasis added.)

[3] The 1993 amendments to ORS chapter 73, Oregon Laws 1993, chapter 545, were enacted after the enactment of ORS 165.002(4); therefore, they cannot be treated as context for purposes of construing the latter statute. However, it is worth noting that our conclusion is consistent with the use of the relevant terminology in those amendments to Oregon's version of Article 3 of the Uniform Commercial Code. When, as here, money orders are payable on demand and drawn on a bank, they serve as checks. ORS 73.0104(6). ORS 73.0105(1) provides that "issue" means "the first delivery of an instrument by the maker or drawer, whether to a

Defendant remonstrates that this court's decision in *State v. Blake*, 93 Or App 128, 760 P2d 1369 (1988), stands for the proposition that signing one's own name to a negotiable instrument precludes the possibility of it being a forgery. We disagree. In *Blake*, the defendant attempted to cash stolen traveler's checks that were signed on the exemplar line by James L. Dayton. *Id.* at 130. The defendant countersigned them in his own name, Claudio Blake. *Id.* Because a forged instrument is one that appears to be authentic but has been falsely made, completed, or altered, ORS 165.002(4) - (6), (8), we concluded that the defendant did not commit forgery; without Dayton's countersignature, the checks did not appear to be authentic. *Blake*, 93 Or App at 132. The money orders in this case were different. There was no exemplar signature that had to be matched in order to make the instruments negotiable. Anyone could have signed them as the "purchaser" without affecting their appearance of authenticity. Defendant's signature did not change the fact that the money orders were made without the authorization of their ostensible maker, Travelers Express. *Cf. Hamilton*, 291 Or at 290 ("Even though the defendant signed her own name, there was evidence that the writing, as altered, had the appearance of an authorized act and thus told a lie about itself so that it seemed to be other than it was." (footnote omitted)).

Because Travelers Express, the ostensible maker, did not authorize defendant to print the two money orders, they were not authentic. Thus, they were forged instruments. The trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.

---

holder or nonholder, for the purpose of giving rights on the instrument to any person." ORS 73.0105(3), in turn, defines "issuer" as "a maker or drawer of an instrument." Those definitions comport with our conclusion that Travelers Express, as the supposed *issuer* and *drawer* of the money orders in this case, was their ostensible *maker*. Defendant, on the other hand, as the supposed *purchaser* of the money orders, was their ostensible *remitter*. *See* ORS 73.0103(1)(k) (defining "remitter" as "a person who purchases an instrument from the issuer if the instrument is payable to an identified person other than the purchaser").