## STATE OF OREGON,
*Respondent,*

*v.*

## STANLEY VIVIAN GILBERTSON,
*Appellant.*

(10-89-00698, 10-89-01853;
CA A61677 (Control), CA A61678))
(Cases Consolidated)

822 P2d 716

Steven V. Humber, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Acting Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## JOSEPH, C. J.

Defendant was convicted of burglary in the first degree, assault in the fourth degree, attempted assault in the first degree, attempted murder, sodomy in the first degree and criminal mischief in the first degree. ORS 164.225; ORS 163.160; ORS 161.405.[1] We affirm.

Officer Davis received a call about a family disturbance at 9:48 p.m. He and two other officers responded within 10 or 15 minutes and found defendant's wife at a neighbor's house. She had been severely beaten. Defendant was inside his house, apparently throwing objects around. He emerged, went to a car in the driveway and tried to kick in its window. The officers told defendant to put his hands on a nearby fence, which he did, and they then handcuffed him. They did not then advise him of his rights, Davis testified, because they handcuffed him only to calm him down and he was not under arrest. Davis asked defendant what was going on, and he responded with his version of the events. Davis then asked him once more what was going on, whether he had hit or chased his wife and why he had trashed the house, and defendant responded.

At that point, another officer told Davis that he had confirmed the assault on defendant's wife. Davis then placed defendant under arrest and began to read him his rights. Defendant said that he would not talk to the officer any more without a lawyer, and Davis stopped questioning him.

■ The state did not attempt to use defendant's statements to Davis in its case-in-chief. Defendant testified for himself. On cross-examination, and over a defense objection, the prosecutor questioned him about the statements that he made to Davis before he was advised of his rights. During the state's rebuttal, the prosecutor called Davis and questioned him about defendant's statements. Defendant's objection was again overruled. Defendant assigns error to the court's permitting the state to use the statements to impeach his testimony.

---

[1] The criminal mischief charge was filed separately, but the charges were consolidated for trial and are consolidated for appeal.

The Supreme Court has held that statements made after a purposeful, knowing and intentional violation of a defendant's right not to be questioned may not be used for any purpose. *State v. Isom*, 306 Or 587, 594, 761 P2d 524 (1988). It specifically left open the question of whether statements made after "a mere failure to provide * * * the information required by *Miranda*" may nonetheless be used for impeachment.

We need not decide the question here because, even if it was error to allow the statements to be used, the error was harmless. As the court also said in *Isom*, 306 Or at 595:

"Under Oregon law, a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant. OEC 103(1). This court has interpreted this to mean that the verdict may be affirmed if there is 'little likelihood that the error affected the verdict.' " (Citations omitted.)

The unwarned statements were defendant's version of how the altercation between him and his wife began. Davis testified:

"[Defendant] stated that [his wife] had picked him up in Springfield, had brought him back to her house at 4222 Royal and had told him that they were going to make love and then undressed him.

"He said that then without any warning she became very incensed and started to beat him around the head with some type of roller device and then tried to cut his throat."

He also testified that, when he asked again what had happened, defendant presented a slightly different version:

"This time, instead of starting in Springfield he started out by saying that she was giving him a head job and then all of a sudden she started hitting him."

Defendant testified that he had arrived at the house unexpectedly and that the altercation began before his wife suggested that they have sexual relations. In every version, however, he said that he had hit his wife in response to her attacking him.

The statements that Davis testified about, and as to which defendant was cross-examined, might be said to be likely to have affected the verdict adversely and unfairly had

they been the only inconsistencies in defendant's account and between his account and various undisputed facts. However, so much else contradicted defendant that the impact of the unwarned statements can reasonably only be viewed as inconsequential. Both the physical evidence and eyewitness testimony contradicted defendant's version. The wife's injuries were so extensive that the jury would almost certainly not have believed them to have been caused by only two blows in self-defense, as defendant claimed. His story that she attacked him with a knife is inconsistent with his own direct testimony that she threw the knife out of the house, where the police found it. That she yelled for help as she threw the knife away is also contradictory of his story that she was attacking him. He also claimed that she had nicked him on the neck with the knife during her attack on him, but there was no physical evidence of that. We conclude that the use of the unwarned statements was very unlikely to have affected the outcome of the trial and that, therefore, their admission was harmless error.

■    Defendant's second assignment is that the court erred in entering separate convictions for assault IV, attempted assault I and attempted murder. He contends that the assault and attempted assault offenses necessarily are included in the attempted murder offense. Therefore, he argues, under *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979), only one conviction is proper, and the conviction for assault should merge into the attempted assault conviction, which should in turn merge into the attempted murder conviction. He urges us to remand for entry of a single conviction for attempted murder.

*Cloutier* defined "true merger" as existing when all the elements of the lesser offense are included in the greater offense. Under current Oregon law, when there are two statutory offenses and one includes an element that the other does not, there is no merger. ORS 161.067(1); *State v. Owens*, 102 Or App 448, 795 P2d 569 (1990). Attempted assault I requires proof of use or attempted use of a deadly or dangerous weapon; murder or attempted murder do not. Murder requires proof of intent to kill; assault does not. The court did not err when it refused to merge the convictions for attempted murder and attempted assault.

■ As for the assault and attempted assault convictions, ORS 161.067(3) provides:

> "When the same criminal conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

Because there was only one victim, assault IV could be a lesser included offense of attempted assault I. As such, the attempt and the assault would violate only one statutory provision within the meaning of ORS 161.067(3), and the convictions would merge. However, the evidence permitted a factfinder reasonably to conclude that two separate crimes had occurred.

According to the wife's testimony, just after defendant entered the house, he held a knife to her hand and took a substantial step toward using a deadly weapon to inflict serious physical injury. She broke away and ran into the laundry room, where she remained until defendant broke open the door and beat her until she lost consciousness. If she was believed, the jury could find that the time between her flight and his entry into the laundry room afforded him the opportunity to renounce his criminal intent. The court did not err in refusing to merge the assault convictions.

Affirmed.